### HARPER vs. POPE & WEST.

1. The "concealment" mentioned in the stat. of lim. of 1835, which prevents the running of the statute, need not be with a fraudulent intent—any concealment which prevents the plaintiff from bringing his suit is sufficient.

2. Where a party living in Illinois purchased goods, and had them shipped to his then residence, and then immediately moved to Clay county in this State—remained there a short time, and then moved to St. Louis county—but never informed the creditor of his place of residence—the creditor having used proper diligence to discover his residence, and not finding him—held to be such a concealment as to prevent the statute from running.

## APPEAL from St. Louis Circuit Court.

GANNT, for Appellant.

POLK, for Appellees.

McBRIDE, J., delivered the opinion of the court.

Josiah Pope & Otis West brought their action of assumpsit against Daniel Harper. The declaration contains the common counts. The defendant after having obtained a bill of particulars, among others filed two pleas of the statute of limitations. The plaintiffs replied, first:—the cause of action did not accrue within two years; second : the defendant left the State, and did not return unitl within two years next before the commencement of this suit; and third : that defendant concealed himself, and so prevented the commencement of a suit against him. There was a third plea filed by defendant, interposing the statute of limitations, to the demand of the plaintiff. Rejoinders were filed, and the case went to trial before a jury, who found that the defendant

did undertake, &c., and that he did conceal himself, and so prevent the commencement of a suit;—and that the cause of action did not accrue within two years, next before the commencement of the suit; and that the defendant came to the State of Missouri, more than two years before the commencement of the suit, and has ever since continued to reside therein—and they assessed the damages at $317 84.

The defendant filed a motion for a new trial, assigning as reasons therefor: 1st, That the verdict was against evidence; 2d, Against the weight of evidence; 3d, Against the instructions of the court, given at the instance of the defendant; 4th, That the court erred in instructing the jury as prayed for by the plaintiff's attorney. The court overruled the motion and the defendant excepted, and appealed to this court.

The bill of exceptions shows that at the trial, the plaintiffs proved the partnership of Pope and West, and the sale and delivery of the goods to the defendant, by the plaintiffs, in September, 1837, and their value. That in the years 1837,—'8,—and '9, the plaintiffs employed an agent, who was in the habit of making excursions into the interior of Illinois and Missouri, for the purpose of collecting for different merchants in St. Louis, and he was told that he would find the defendant at Exeter, on the Illinois river. He visited the place indicated, enquired for defendant, and was informed that he had removed from that section of the country, and his informant could not inform him where the defendant had gone. He afterwards enquired for him without success on the Upper Mississippi, as high as Quincy, Illinois, and in 1838 and '9, he enquired for the defendant on the Missouri river, visiting most of the towns on the river, and some in the interior. He did not enquire in all the towns which he visited, as in some of them he had only about an hour's business. Witness then took a horse and travelled south to Arkansas, &c,

The defendant read in evidence the depositions of witnesses residing in Clay county, stating that in the fall of 1837, the defendant removed to that county and remained there till the spring of 1839, going once in the spring of 1838, to St. Louis, to purchase groceries. He then produced witnesses residing in St. Louis county, who proved that the defendant in the spring of the year 1839, moved to that county,—saw him seeking employment or work by the day—that he lived a short period at his mother-in-law's, and then removed to his own farm, about twelve miles from the city of St. Louis, where he has since resided. The circuit court at the instance of the defendant's counsel, gave several instructions, the first referring to the question of the return of

Harper vs. Pope & West.

the defendant into this State, more than two years, &c.; and the second and third, stating to the jury in substance, that the plaintiff is bound to take notice of the residence of his debtor, in any part of the State of Missouri, unless the defendant be guilty of concealment, &c., the burden of proving which, lies on the plaintiff, and in the absence of testimony tending to show such concealment, they must find the issue for the defendant;—and that the fact that the plaintiffs did not succeed in finding the defendant does not prevent the running of the statute, unless the jury believe that such finding or discovery of the defendant, was prevented by concealment, &c.

At the instance of the plaintiffs' attorney, the court instructed the jury:—1st, That the concealment contemplated by the statute, need not have been with the intent of defrauding the plaintiffs of their demand. 2d, There is a legal obligation on the debtor to pay the creditor the amount of the debt, so soon as the same falls due.

Two questions are presented for the determination of this court.

*First*, Did the court err in giving to the jury instructions asked by the plaintiffs? *Second*, Was the finding of the jury against the evidence in the cause? By the eighth section of an act of the general assembly of this State, entitled "An act prescribing the time of commencing actions," approved March 16th, 1835, R. C. 396, it is provided that "if any person by absconding or concealing himself or by any other improper act of his own, prevent the commencement of any action in this act specified, such action may be commenced within the times herein respectively limited, after the time the commencement of such action shall have ceased to be so prevented."

The counsel have not referred us to any legal exposition of the term "concealing," as used in the foregoing connection, nor have we been able after diligent research, to find any. It is a word not generally used in the statutory provisions of the several States, in connection with the subject now before us, and thus far appears not to have called for judicial interpretation. It is contended that the term "concealing" *ex vi termini*, imports a wrongful act, and so also it may be said of every act of a debtor, the effect of which would be to prevent his creditors from commencing an action against him—besides the statute couples it with the words "any other improper act," thereby showing that the concealment must be improper. But does it follow that every improper act of a party is fraudulent? If a debtor should improperly or even fraudulently attempt to conceal himself, but should so far fail in his attempt as to defeat the service of process on him, I apprehend it would be a matter of but little consequence to enquire into his in-

tention. Equally unimportant would be the enquiry into the intention of a party who continued concealed, so as to prevent the service of a process. I am led then to the conclusion that that construction should be given to the statute, which shall refer the question rather to the effect of a debtor's act than to his intention. The necessity is not perceived, of imposing the burden upon a plaintiff of establishing before a jury the existence of a fraudulent act in the mind of his debtor. An issue thus framed, would be less tangible than one upon the consequence of a party's act, and would not so well promote the ends of justice.

If the establishment of a fraudulent intention be a pre-requisite, cases might, and no doubt would arise, in which, notwithstanding the plaintiff had been prevented by the defendant's conduct, in bringing his suit, still he would be remediless.

It may be remarked, that although the statute is penal in its character, yet it differs materially in its operation from penal statutes generally; inflicting as it does its penalty on the plaintiff, for failing sooner to commence his action against his debtor. There being no forfeiture denounced against the defendant, he has not the same right as in a criminal prosecution, to require proof that his acts, unquestionably injurious to the interest of the plaintiff, were coupled with a fraudulent intention.

If the foregoing views be correct, then we think that the giving of the first instruction at the instance of the plaintiffs did not prejudice the defendant; although we regard the instruction as being without the statute.

The second instruction given, asserts nothing more than a legal truism, which the court might give or refuse at its pleasure, and its action would not be sufficient cause for reversing the judgment.

We are next to inquire whether the finding of the jury was against the evidence? In September, 1837, the plaintiffs sold the defendant a lot of goods, which were shipped to some town on the Illinois river where they were most probably not opened, for the evidence shows that in the same fall the defendant removed to Clay county, Missouri. He remained in that county, until the spring of 1839, when he removed to St. Louis county, and has continued to reside there ever since. In the spring of 1838, the defendant visited St. Louis, to replenish his stock of goods, but did not make it convenient to call and see the plaintiffs, and renew his acquaintance with them. During all this time, from the sale of the goods, until the fall of 1839, the plaintiffs were diligent in endeavoring to find out the residence of the defendant, and collect their

claim from him, but their agent after having traversed the State of Missouri, and a part of Illinois, could gain no intelligence of him, so frequent and secret were his movements, as to leave no trace behind him. From this evidence the jury might well find their verdict under the issue submitted to them.   The *intention* of the plaintiffs to avoid the forfeiture under the statute, is we think manifest, and they were only prevented from the commencement of their suit, by the wrongful conduct of the defendant.

Judgment affirmed.